7139

## HYPES v. SOUTHERN RY. CO.

SLANDER.—A CORPORATION is liable for slander of one of its employees by another in reference to a matter growing out of such contract relation, the matter being one within the duty of the slandering employee to adjust, whether the corporation subsequently ratified the slanderous act of its employee or not.

Before KLUGH, J., Greenville, March, 1908.   Affirmed.

Action by C. E. Hypes against Southern Railway Company and P. L. McManus.   From judgment overruling demurrer, defendant company appeals.

*Messrs. Cothran, Dean & Cothran,* for appellant, cite: 18 Ency., 1059; 10 Cyc., 1216; Newell on Slander, 361; Ogden Libel and Slander, 368; Cooley on Torts, 124; 13 Ency. P. & P., 30; 27 L. R. A., 63; 32 S. E. R., 392; 54 S. E. R., 793; 136 Fed., 132; 27 S. E. R., 986; 17 Mo., 213; 9 L. R. A. (N. S.), 929.

*Mr. J. J. McSwain,* contra, cites: 62 U. S., 202; 77 S. C., 549; 31 L. R. A., 390; 79 S. C., 287; 1 Wood's Ry. L., sec. 162; 10 Cyc., 1210; 13 Am. D., 588; 8 Am. R., 79; 3 S. C., 580; 29 S. C., 387; 37 S. C., 199; 58 S. C., 143; 100 U. S., 699; 2 Pac., 369; 122 U. S., 597; 24 Am. R., 447; 34 Am. R., 494; 3 S. E. R., 923; 17 Am. R., 656; 25 Am. R., 783; 49 Am. R, 800; 13 Pac, 609; 21 N. W., 326; 12 N. E., 826; 56 L. R. A., 804; 39 Am. R., 606; 54 Am. R., 372; 27 S. E. R., 986; 32 S. E. R., 392.

April 9, 1909.   The opinion of the Court was delivered by

MR. JUSTICE JONES.   This is an action to recover damages, for allegedSlander, against the defendant railway corporation and its general division superintendent.   The

defendant corporation interposed a demurrer to the complaint, that it failed to state facts sufficient to constitute a cause of action, for the reason that a corporation cannot be held liable in damages for slander by one of is employees. The demurrer was overruled by Judge Klugh, and exception is now taken in which it is contended that a corporation is not liable for slander uttered by one of its employees unless it affirmatively appear that such agent was expressly directed or authorized by the corporation to speak the words in question, of which there is no allegation in the complaint.

It appears that some time previous to July 20, 1906, the plaintiff was a locomotive engineer of the defendant company and at the end of May, 1906, turned in his time report showing the number of hours he had worked during the month. This claim was disallowed by defendant to the extent of $37. Plaintiff, after some correspondence, had an interview with P. L. McManus, the superintendent of the defendant corporation in the division headquarters in Greenville, S. C., in which they took up the matter of plaintiff's unpaid time. In this interview it is alleged that McManus as superintendent declared in loud tones in the hearing of several persons within the room and referring to plaintiff: "I am going to stop you fellows from stealing from the company," and called plaintiff a "thief" several times. The complaint further alleged that a letter was immediately written to each of the defendants setting out the slander and demanding an apology and that the letter was never acknowledged or answered, and that after notice of the wrong, the defendant corporation by its silence and acquiescence has approved and ratified the conduct of its said superintendent.

It was further alleged: "That the action of the said P. L. McManus, in accusing plaintiff of 'stealing,' and of being a 'thief' was done within the scope of his authority and in the discharge of his duties as superintendent as such; that he

was acting for the Southern Railway Company and for its interests, as indicated by his words, 'I am going to stop you fellows from stealing from the company.' That the tort against the plaintiff was committed in the office of the said superintendent while going over the books considering the question of plaintiff's time, which said P. L. McManus had full authority and power to settle; and further that the said defendant company has approved of the slander of its said agent and superintendent by failing to acknowledge said letter and refusing to apologize to plaintiff for the insult offered him and the wrong and damage to his good name, and said injury was caused by the joint and concurrent act of the defendants."

We think the demurrer was properly overruled.

It is established that corporations as well as natural persons are liable for the wilful tort of an agent acting within the general scope of his employment, without previous express authority or subsequent ratification. *Rucker* v. *Smoke,* 37 S. C., 377, 16 S. E., 40; *Williams* v. *Tolbert,* 76 S. C., 217, 56 S. E., 908; *Schumpert* v. *Railway,* 65 S. C., 332, 43 S. E., 813; *Gardner* v. *Railway,* 65 S. C., 342, 43 S. E., 816; *Riser* v. *Railway,* 67 S. C., 419, 46 S. E., 47; *Dagnall* v. *Railway,* 69 S. C., 115, 48 S. E., 97; *Fields* v. *Cotton Mills,* 77 S. C., 549, 58 S. E., 608, 11 L. R. A. (N. S.), 822.

The old doctrine that a corporation, having no mind, cannot be liable for acts of agents involving malice has been completely exploded in modern jurisprudence. While a corporation is non-personal in its formal legal entity, it represents natural persons and must necessarily perform its duties through natural persons as agents, hence must spring the correlative responsibility for the acts of its agents within the scope of their employment.

The liability of a corporation for malicious libel published by its agent in the course of his employment is generally recognized. *Philadelphia etc. Ry. Co.* v. *Quigley,* U.

S. 12 L. ed., 73; *Johnson* v. *St. Louis Dispatch Co.* (Mo.), 27 Am. Rep., 293; *Bacon* v. *Michigan etc. R. R. Co.* (Mich.), 34 Am. Rep., 372; *Maynard* v. *Firemen's Fund Ins. Co.* (Cal.), 91 Am. Dec., 672; *Fogg* v. *Boston etc. R. R. Co.* (Mass.), 12 Am. St. Rep., 583; *Missouri, Pacific Ry.* v. *Richmond* (Texas), 15 Am. St. Rep., 794; 10 Cyc., 1215, 18 Ency. Law, 1058.

We do not regard the distinction between written and unwritten slander to be of sufficient importance to warrant the application of a different rule. The written slander is not always or necessarily more public than the spoken, and if it may indicate more deliberation and hence warrant more easily the inference of malice, the difference is merely in degree not in kind. It may otherwise appear that the slander was wilful, as in this case under the demurrer.

This view is supported by a recent decision by the Supreme Court of Mississippi, *Rivers* v. *Yazoo & Mississippi Valley R. R. Co.,* 9 L. R. A. (N. S.), 931, which quotes from Lord Mansfield in *Maloney* v. *Bartley,* 3 Camp., 210, to the effect that there is no well founded distinction between written and unwritten slander, and that the reasons given in the books for such a distinction are very insufficient. The Mississippi case held that a corporation is liable for slander spoken by its agent while acting within the scope of his employment and in the actual performance of the duties of the corporation touching the matter in question, although it did not appear that the slanderous words were uttered and published with the knowledge, approval, consent or ratification of the corporation. In the case of *Singer Manufacturing Co.* v. *Taylor,* 9 L. R. A., N. S., 929, the Supreme Court of Alabama held that in the absence of contract relation between the master and the person slandered, the master is not liable for a slander uttered by his servant which the master does not authorize or ratify.

In the case at bar, the complaint shows a contract relation between the corporation and the person slandered and that

the slander was in reference to a matter growing out of such relation, a dispute as to the correctness of plaintiff's claim for wages, a matter within the duty of the agent to adjust.

In the case of *Behre* v. *National Cash Register Co.* (Ga.), 27 S. E. Rep., 986, the Court held, that while a corporation may make a libelous publication, it is not liable for oral slander by one of its servants, though within the scope of the duties of the agency, unless it affirmatively appear that the agent was expressly authorized by the corporation to speak the slanderous words. The reason assigned for this conclusion is that there can be no agency in slander. We see no good ground for distinguishing slander from other wilful torts in this regard. In 10 Cyc., 1216, it is stated that the liability of a corporation for oral slander seems to stand on a different footing and that the corporation is exonerated unless it authorized, approved or ratified the act of the agent. To support the text the only case cited is *Redditt* v. *Singer Mfg. Co.*, 124 N. C., 100; 32 S. E. Rep., 392. An examination of that case, however, shows that a majority of the Court were of the opinion that "a corporation is responsible for slanderous words uttered by its agents in the course and scope of such agents' employment and in aid of the company's interest," but that under the circumstances of the case they concurred in holding the charge error because it excluded the right of possible justification. The case is really authority for our conclusion. The later case of *Sawyer* v. *Norfolk & S. R. Co.*, 54 S. E. Rep., 793, more fully shows the position of the North Carolina Court. In that case the Court was unanimous in holding that a corporation may be liable for slander, committed by its agent and that the test of liability depended upon the question whether injury was committed by the authority of the master expressly conferred or fairly implied from the nature of the employment and the duties incident thereto. In applying the principles stated, the Court held that a corporation was not liable for slander by its superintendent against one vol-

untarily in its office seeking employment which the superintendent was authorized to give, but which was refused, and then the superintendent slandered the person in regard to his former work for the company. In determining the question of implied authority, the Court considered, not only the relation between the corporation and its agent, but between the corporation and the person slandered, holding that at the time of the slander there was no special relation of duty between the corporation and the plaintiff. We have adverted to the fact that in the case at bar the special relation between the corporation and the plaintiff is shown. In the case of *International Text Book Co.* v. *Heartt,* 136 Fed., 132, the slander was uttered by the agent after he had left plaintiff's premises and gone to another locality where he was not engaged in the performance of any duty under the terms of his employment. *Childs* v. *Bank* 17 Mo., 213, cited by appellant, held the early view that a corporation is not capable of malice, but that conception is not now recognized in the law of Missouri as appears by reference to *Gillett* v. *Missouri Valley R. Co.,* 17 Am. Rep., 653, and *Boogher* v. *Life Association,* 42 Am. Rep., 413.

Our conclusion is that the complaint shows facts from which it may be inferred that the slander in question was uttered within the course and scope of the agent's employment and under implied authority of the master. This view sustains the order overruling the demurrer and it is unnecessary to consider whether the facts stated also show subsequent ratification of the alleged slander by the master.

The judgment of the Circuit Court is affirmed.