## 10907

### COURTNEY v. AMERICAN RY. EXPRESS CO.

(113 S. E. 332)

1. Corporations—Express Company not Liable for an Employee's Slander of Discharged Employee, Where it is not Shown He Was Engaged in its Business at the Time.—Where a route agent for express company, while waiting for a train at a station, remarked to a coemployee concerning a former discharged employee of the company, "We fired him like we would an ordinary thief," the company cannot be held liable for slander on account thereof, where it is not shown that the agent was engaged at the time in any business for the company.

2. Corporations—Corporation Liable for Slander as for any Other Tort.—A corporation is liable for slander under the same circumstances as would make it liable for any other tort.

3. Master and Servant—Master's Liability for Torts of Servant Stated.—To hold a master liable for the tort of his servant, the servant must have been at the time engaged in the discharge of his duties and acting within the apparent scope of his employment.

4. Libel and Slander—Admission of Evidence of Previous Slander Uttered by a Codefendant, to Show Malice of Defendant, Held Error.—In an action by a person slandered against a corporation by which he was formerly employed and the agent of the corporation who made the slanderous statement, the admission of evidence of former slanderous statements concerning plaintiff by the agent was error, since, although such evidence would show the malice of the agent, it could not be introduced to show malice on the part of the corporation.

5. Appeal and Error—Court May Order New Trial as to one of two Codefendants, and Direct Nonsuit as to Other.—In an action against codefendants an appellate Court may order a new trial for one of the codefendants, and direct a nonsuit for the other.

6. Appeal and Error—Judgment Against Two Codefendants, Against one of Whom it Was Reversed With Order to Grant Nonsuit, Will be Reversed and Remanded as to the Other.—In an action by a person slandered against a corporation and an agent of the corporation who made slanderous remarks concerning plaintiff, in which judgment was rendered against both defendants, where the judgment was improper as to the corporation, it will be reversed and remanded as to the agent, in view of the uncertainty that, if the agent had not been joined with the corporation, such a verdict would have been rendered.

Before TOWNSEND, J., Richland, June, 1921. Reversed, with instructions.

Action by W. J. Courtney against American Railway Express Co. Judgment for plaintiff and defendant appeals.

*Messrs. Barron, McKay, Frierson & McCants,* for appellants, cite: *Liability of corporation for slander by employee:* 96 S. C. 294; 82 S. C. 315. *And for torts generally:* 72 S. C. 205; 2 C. J. 851. *Must have been done within scope of employment:* 108 S. C. 179. *Evidence insufficient to warrant verdict:* 99 S. C. 417; 104 S. C. 30; 107 S. C. 368; 107 S. C. 325; 105 S. C. 128; 151 S. W. 244; 136 Fed. Rep. 129. *No joint liability for slander:* 96 S. C. 297.

*Messrs. Holman & Holman, A. F. Spigner* and *Graydon & Graydon,* for respondents, cite: *Liability of corporation for slander by its employees:* 82 S. C. 315; 37 S. C. 377; 76 S. C. 217; 65 S. C. 332; 65 S. C. 342; 67 S. C. 419; 69 S. C. 115; 77 S. C. 549; 72 S. C. 205; 37 S. C. 194. *Exceptions faulty:* 95 S. C. 385; 100 S. C. 43; 99 S. C. 200; 114 S. C. 332.

July 5, 1922.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for damages on account of an alleged slander of the plaintiff by the defendant Park, a route agent of the corporation defendant. The plaintiff had a verdict of $5,000 against both of the defendants, and from the judgments entered thereon they have appealed.

The evidence on behalf of the plaintiff tended to establish the following facts, which in disposing of the motion for a directed verdict will be assumed to be true:

For some time prior to May 6, 1920, the plaintiff, Courtney, was employed by the defendant express company as

a special agent, charged with the duties ordinarily incident to that position which need not be detailed. On that day he was discharged by W. F. Terrell, superintendent of the company, the alleged ground of his discharge being the filing of an expense account for a trip to Rock Hill, which it was asserted he had not made. The defendant Park at that time was a route agent of the company and had investigated the charge against the plaintiff, making a trip to Rock Hill in conducting the investigation. Two weeks later the incident was closed by the discharge of Courtney. Park was at the railroad depot at Branchville, waiting around the station platform for a train. While there became engaged in conversation with a man whom Kaigler, the plaintiff's main witness, did not know, but who was identified by Park when he testified as W. G. Minnick, a special agent of the company. Kaigler was a bystander, in nowise connected with the company or either of the other two men. He testified that he overheard the conversation between Park and Minnick; that they were talking about Courtney; that Minnick said to Park, "You had a good man up there as C. O. D. Collector"; and that Park replied, "We fired him like we would an ordinary thief." It is upon this statement by Park to Minnick, overheard by the bystander, Kaigler, that the action for slander is based.

Upon the trial of the case in circuit, both sides went fully into the circumstances of Courtney's discharge by Superintendent Terrell, and into the merits of the controversy between Terrell and Courtney as to whether Courtney was in fact at Rock Hill upon the occasion, for the expenses of which trip he had filed an expense account with the company. An array of witnesses appeared, with hotel registers, certificates, affidavits, and other documents, upon this issue. As we view the case, this matter was entirely foreign to the issue before the Court and will be dismissed from further consideration.

33 S. C.—120.

At the close of all the testimony the defendant express company moved for a directed verdict in its favor, upon the ground that there was no evidence tending to show that at the time that the alleged slander was uttered the route agent, Park, was so acting within the scope of his employment as to bind the express company, his employer. The motion was refused, and the defendant urges that refusal as a ground of reversal. This brings up the only real issue in the case, so far as the express company is concerned. We are of the opinion that the motion should have been sustained for the reasons which follow:

After much discussion and great divergence of opinion, it may be regarded as settled by practical unanimity of text-writers and decided cases, that slander is in the same category with all other malicious torts, and that a corporation may be liable for it as well as for any of the others, under like circumstances. As declared by this Court in *Hypes v. Southern R. Co.,* 82 S. C. 315, 64 S. E. 395, 21 L. R. A. (N. S.) 873, 17 Ann. Cas. 620, which has become a leading case upon the subject (quoting from the syllabus):

"A corporation is liable for slander of one of its employees by another in reference to a matter growing out of such contract relation, the matter being one within the duty of the slandering employee to adjust, whether the corporation subsequently ratified the slanderous act of its employee or not."

The facts of that case fairly illustrate the rule and the limitation of the master's liability, which is this:

In order to hold the master liable for the tort of his servant, the servant must have been at the time engaged in the discharge of duties intrusted to him in reference to the particular matter in hand and acting within the apparent scope of his employment. The plaintiff,

Hypes, was an engineer, and at the end of the month turned in his time report, showing the number of hours he had worked during the month. His claim was dis-- allowed to the extent of $37. After some correspondence Hypes had an interview with the superintendent at division headquarters, in which they took up the matter in hand, the claim for unpaid time. During the interview the super- intendent charged Hypes with stealing from the com- pany, and in the presence of outsiders called him several times a thief. The question came up on demurrer to the complaint, which alleged that at the time of uttering the slander the superintendent was acting in the discharge of his duties as such, and what he said was within the scope of his authority, while going over the books, considering the question of plaintiff's time, which he had full authority to settle. The Court quoted with approval the following from a Mississippi case:

"A corporation is liable for slander spoken by its agent, while acting within the scope of his employment and in the actual performance of the duties of the corporation touch- ing the matter in question."

"The reason the master is liable for the act of the ser- vant at all is because the servant is acting in that matter in the master's stead and for him. Obviously, if the ser- vant is not acting for the master, he cannot be said to be his representative in that act." *Sullivan v. Railway Co.,* 115 Ky. 447, 74 S. W. 171, 103 Am. St. Rep. 330.

In *Washington Gaslight Co. v. Lansden,* 172 U. S. 534, 19 Sup. Ct. 296, 43 L. Ed. 543, the Court declares:

"In order to hold a corporation liable for the torts of any of its agents, the act in question must be performed in the course and within the scope of the agent's employment in the business of the principal."

And again:

"There must be some evidence from which an authority might be implied on the part of the manager to represent the company as within the general scope of his employment, in regard to the subject-matter of the correspondence between Brown and himself."

In 26 Cyc. 1526, discussing the matter of scope of employment, admittedly difficult of definition, it is said:

"The test is not of the character of the act, nor whether it was done during the existence of the servant's employment, but whether the injury complained of was committed by the authority of the master expressly conferred or fairly implied in the nature of the employment and the duties incident to it."

In 5 Thomp. Corp. (2d Ed.) § 5441, it is said:

"The general rule makes the corporation liable for a slander uttered by its agent, while acting within the scope of his employment and in the actual performance of the duties thereof touching the matter in question."

In *Fensky v. Maryland Co.,* 264 Mo. 154, 174 S. W. 416, Ann. Cas. 1917D, 963, it is said:

"The things to be looked to are: (1) was the person an authorized agent of the corporation? and (2) if so, was he acting within the scope of his employment when he used the slanderous language? and (3) was such language used in the actual performance of his duties, and touching the matter in question?"

See, also, *Vowles v. Yakish,* 191 Iowa, 368, 179 N. W. 117, 13 A. L. R. 1132.

In the latter case, after stating the test in the foregoing language in the Missouri case, the Court says:

"If the agent acting within the scope of his employment and in the actual performance of the duties thereof touching the matter in question utter a slander," etc.

In *McClenaghan v. Brock,* 5 Rich. 17, it is held:

"A master is not responsible for the act of his free servant done outside of his employment."

There a slave was shot by another who was second engineer on a steamboat; the slave injured being. upon a lighter near the steamboat, and the second engineer not acting within the scope of his employment, though engaged at the time about his master's business.

In *Cobb v. Railroad Co.,* 37 S. C. 200, 15 S. E. 879, where a horse was frightened and made to run away by the shouting of train hands on a train that was passing, the Court held:

"If, while in the defendant's employ, and in the exercise of the duties of the position for which he was employed, he maliciously * * * performed those duties, * * * the employer is liable."

And again:

"It is a salutary rule to hold employers responsible for the acts of their employees while performing the duties for which they are employed."

See, also, *Moore v. Railroad Co.,* 38 S. C. 1, 16 S. E. 781; Rucker *v. Smoke,* 37 S. C. 377, 16 S. E. 40, 34 Am. St. Rep. 758; *Skipper v. Clifton Mfg. Co.,* 58 S. C. 143, 36 S. E. 509; *Carson v. Railroad Co.,* 68 S. C. 55, 46 S. E. 525; *Davenport v. Railroad Co.,* 72 S. C. 205, 51 S. E. 677, 110 Am. St. Rep. 598; *Polatty v. Railroad Co.,* 67 S. C. 391, 45 S. E. 932, 100 Am. St. Rep. 750.

Applying these principles to the facts of this case, it clearly appears that they do not fix liability upon the express company for the alleged slander.   In the first place, it has not been made to appear that at the time of the utterance of the slander Park was engaged in any business whatever for the company.   It appears that he was at the station waiting for a train, and struck up a casual conver-

sation with Minnick who was employed by the common master.

In the next place, it does not appear, and in the nature of things, the incident of discharge being closed, could not appear that at that time Park was engaged in the discharge of any duty committed to him by the company, in connection with Courtney's employment or discharge. It was at most a personal opinion of Park as to a matter that was ended and with which he at that time had absolutely no connection. Certainly it could not be said that the company had intrusted him with any duty in connection with it; and assuming that he was then at the depot engaged in some business with which he had been intrusted, his wrongful act could not be imputed to the company unless that business was connected with the subject-matter of the alleged slander.

In reference to the appeal of the defendant Park, it was error to allow in the joint action testimony of a previous slander alleged to have been uttered by another employee of the defendant. Conceding for the purpose of argument, as contended for by respondent's attorneys, that in an action of slander evidence of other slanders may have been introduced as tending to show malice, the plaintiff chose to bring a joint action against the company and Park for a slander uttered by Park, and certainly Park should not be prejudiced by such evidence as would affect only the company.

Besides, following the rule laid down in *Washington Co. v. Lansden,* 172 U. S. 534, 19 Sup. Ct. 296, 43 L. Ed. 543, the Court is authorized to order a new trial as to Park while directing a nonsuit for the company.

It would be manifestly unjust, if there were no errors in the trial affecting Park, to allow a judgment of $5,000 to stand against him alone, in the

uncertainty that, if not yoked up with the company, such a verdict would have been rendered against him.

The judgment of this Court is that the judgment of the Circuit Court is reversed, and that the case be remanded to that Court, with instructions to order a nonsuit in favor of defendant company under rule 27 (90 S. E. x) and for a new trial against the defendant Park.